# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**04/20/2018** at 04:04:59 PM
Clerk of the Superior Court
By Bryant Schmelzel, Deputy Clerk

Daniel M. Gilleon SBN 195200
The Gilleon Law Firm
1320 Columbia Street, Suite 200
San Diego, CA 92101
Tel: (619) 702-8623/Fax: (619) 702-6337

Manuel Corrales, Jr. SBN 117647
ATTORNEY AT LAW
17140 Bernardo Center Drive, Suite 358
San Diego, CA 92128
Tel: (858) 521-0634/Fax: (858) 521-0633
Email: mannycorrales@yahoo.com

Attorneys for Plaintiff SARA ALFARO

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| SARA ALFARO<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY OF SAN DIEGO; SAN DIEGO FIRE-RESCUE DEPARTMENT; JAMIE NICHOLS; KELLEY ZOMBRO; and GINA LA MANTIA and DOES 1-50 inclusive,<br><br>        Defendants. | Case No. 37-2018-00019800-CU-OE-CTL<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Sex Harassment in Violation of Title VII, 42 U.S.C. 2000e et seq.<br>2. Sex Harassment in Violation of FEHA Cal. Gov't Code §12940(a) & (j)<br>3. Discrimination in Violation of Title VII, 42 U.S.C. 2000e et seq.<br>4. Discrimination in Violation of FEHA, Cal. Gov't Code §12940(a)<br>5. Unequal Pay in Violation of the California Equal Pay Act, Cal. Lab. Code §§ 1194.5, 1197.5<br>6. Retaliation in Violation of Title VII.<br>7. Retaliation in Violation of Cal. Gov't Code §12940(h)<br>8. Retaliation in Violation of Violation of the Whistleblower Protection Act, Gov. Code 8547 et seq.<br>9. Retaliation in Violation of the California Whistleblower Protection Act, Cal. Lab. |

COMPLAINT FOR DAMAGES

1

        Code §§ 1102.5 & 98.6
10. **Failure to Take All Reasonable Steps to Prevent Sexual Harassment, Discrimination, and Retaliation in Violation of Cal. Gov't Code § 12940(k)**
11. **Intentional Infliction of Emotional Distress**

**DEMAND FOR JURY TRIAL**

Plaintiff Sara Alfaro alleges as follows:

## I.

### INTRODUCTION

1.    Sara Alfaro brings this suit against the San Diego Fire-Rescue Department ("SDFD" or "the Department"), the City of San Diego, Jamie Nichols, Kelley Zombro, and Gina La Mantia for sexual harassment and discrimination, as well as retaliation and intentional infliction of emotional distress, that she has experienced while working for the Department.

2.    Men dominate the ranks and culture of the SDFD. Women hold only five of the approximately 120-130 operational Fire Captain positions, one of approximately 25 Battalion Chief positions, and one of approximately 12 Deputy Chiefs positions. The atmosphere of the SDFD is undeniably a boys' club.

3.    One of the few female employees and female Fire Captains employed by the SDFD, Alfaro has been and continues to be subjected to severe sexual harassment. Included in the onslaught of sexually objectifying behaviors Alfaro has experienced, male SDFD employees have groped her, unzipped her shirt, placed their exposed genitalia on her possessions, photo shopped a picture of a penis onto a picture of her and distributed this at work, and sent her multiple sexually suggestive text messages. This sexually hostile behavior was a

conspicuous and pervasive feature of Alfaro's workplace, of which the SDFD and the City of San Diego could not help but know.

4.    Alfaro never reciprocated this unwelcome sexual attention, and, instead, focused on her professional development. Nonetheless, she has faced a constant struggle for equal treatment in promotions, assignments, pay and other terms and conditions of employment. Despite proving herself as Captain of one of the Department's ten busiest Fire Houses, Alfaro has been locked out of certain promotions and assignments that go, without exception, to men, many of whom lack Alfaro's qualifications. Many of these positions involve stereotypically male subjects, such as trucks and engines. Alfaro is also held to a higher standard and expected to perform additional work without pay or recognition.

5.    The SDFD and the City of San Diego turned a blind eye to this overt harassment and discrimination for close to 17 years. In February, 2017, Alfaro mentioned this harassment and discrimination to a Fire Chief, who filed an EEO complaint, precipitating two workplace investigations. Instead of taking immediate steps to protect Alfaro, SDFD and the City's HR Department disclosed the fact of her complaints and its investigation to the men of the department, over Alfaro's repeated warnings that this would cause retribution by her male colleagues.

6.    Foreseeably, this resulted in severe retaliation. The sexual harassment intensified and Alfaro was denied countless promotions and assignments, without legitimate explanation. Upon information and belief, the facts of this rapidly deteriorating situation are known to the SDFD and the City, which have failed to remedy the situation.

COMPLAINT FOR DAMAGES

7.    Alfaro files this Complaint to bring an end to the many years of strife she has endured as a result of the SDFD and the City of San Diego's indifference.

## II.

### PARTIES

8.    The SDFD oversees all fire, emergency medical, lifeguard, and emergency management services in the city. The SDFD maintains 48 fire stations and 9 permanent lifeguard stations. There are a total of approximately 1,300 employees in the Department, including all fire, lifeguard, and civilian personnel. It is headquartered at 1010 Second Ave., Suite 400, San Diego, CA 92101.

9.    The SDFD is a department of the City of San Diego ("San Diego" or "the City"). As such, it is an agent of the City, and its actions and knowledge are also those of the City. All Department employees identified herein are also employees of the City. The City HR office is located at 1200 Third Ave, Suite 1316 San Diego, CA 92101.

10.   Jamie Nichols is a Fire Captain at the SDFD. As an employee and agent of the SDFD and the City, he is an agent for those entities and his actions and knowledge are those of the SDFD and the City. His business address is the same is that for the SDFD.

11.   Gina La Mantia is a Deputy Chief at the Department. As an employee and agent of the SDFD and the City, she is an agent for those entities and her actions and knowledge are those of the SDFD and the City. Her business address is the same is that for the SDFD.

12.   Kelley Zombro is a Deputy Chief at the Department. As an employee and agent of the SDFD and the City, he is an agent for those entities and his actions and knowledge are those of the

---

SDFD and the City. His business address is the same is that for the SDFD.

13.   Alfaro does not know the true names and capacities of defendants sued in this Complaint as Does 1 through 20, inclusive, and therefore sues these defendants by fictitious names pursuant to Section 474 of the California Code of Civil Procedure. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through Doe 20, inclusive, when ascertained. Alfaro is informed and believes, and on that basis alleges, that each of the defendants named herein as Does 1 through 20, inclusive, is responsible in some manner for the occurrence, injury and other damages alleged in this Complaint.

14.   Alfaro is informed and believes, and on that basis alleges, that each defendant was in some manner responsible for the acts and damages alleged herein, and/or are indebted to Plaintiff as alleged herein, and that each defendant participated in the acts alleged herein and that, in participating in such acts, each defendant was the agent and co-conspirator of each other defendant, and was acting in the course and scope of such agency and conspiracy.

15.   Sara Alfaro began her employment with the San Diego Fire-Rescue Department and the City as an EMT in 2000. In 2001, she became a Firefighter following a four-month long training in the San Diego Basic Fire Academy. Prior to joining the SDFD, Alfaro worked as a seasonal Firefighter with Cal Fire. Over the course of her tenure with the SDFD, Alfaro has taken on many different roles and contributed to many Department projects and initiatives. In September 2015, Alfaro was promoted to Fire Captain, and became one of five female operational fire captains in the Department.

COMPLAINT FOR DAMAGES

16.   Alfaro has worked in some of the busiest fire stations in the Department, including Stations 5, 12, 10, 29, and 30, three of which were double houses. At each station, Alfaro was the only woman out of a group of 5-10 firefighters during her shift. In addition to the comprehensive understanding of the SDFD's operations and equipment Alfaro developed on the job, she also regularly seeks out and completes trainings. Throughout her employment, the SDFD has always rated her performance "above standard" or better.

III.

FACTS

**A.   SDFD AND THE CITY SUBJECTED ALFARO TO A HOSTILE WORK ENVIRONMENT**

17.   The SDFD is the epitome of an old boys' club. Men dominate the Department's ranks and culture. Only five of the approximately 120-130 operational Fire Captains are women. Women hold only one of approximately 25 Battalion Chief positions and one of approximately 12 Deputy Chiefs positions. The few female employees of the SDFD work disproportionately in administrative positions and in less busy stations. The B Division, to which Alfaro belongs, is often referred to as "the Brotherhood."

18.   Men in the Department openly express male chauvinist and misogynist views in Alfaro's presence. Alfaro has heard male coworkers in the workplace referring to women as "subservient" and discussing the bodies of the few women in the Department.

19.   Throughout Alfaro's employment with the SDFD, she has been the target of unwanted sexual attention and transgressions by male supervisors and employees. Male firefighters have leered at and commented lasciviously on Alfaro's body, groped her rear during work events, watched her

COMPLAINT FOR DAMAGES

6

while she slept, made loud sniffing noises as if they were smelling her, and moaned suggestively in her presence. More specific examples of the harassment that Alfaro experiences include:

    a.  Early on in Alfaro's employment, Chief Brewster repeatedly sought excuses to be near her and pressured her to go out with him.

    b.  In 2013, when Alfaro was at the Station 29 and had her hands full with gear and equipment, now retired Captain Broderick Perkins approached her and partially unzipped her top, exposing her chest. Previously, when she was at Station 12, Captain Perkins had also slapped her buttocks when she was standing on a ladder.

    c.  Around 2014-2015, when Alfaro was the only permanent female firefighter at Station 10, she left a towel with her last name embroidered on it in a bathroom at the station, and later received a text message with a photograph of a penis physically resting on the towel, next to her name.

    d.  A picture of Alfaro's face with a penis photoshopped in beside it was later passed around the Department.

    e.  In 2016, Jamie Nichols grabbed Alfaro's butt several times during an academy reunion, even in the presence of his wife.

    f.  In 2016, Alfaro received a phone call from a male captain, asking her to send him a pair of her dirty underwear for his birthday.

    g.  Around February of 2017, Alfaro received multiple text messages from Fire Captain Jamie Nichols (male) making reference to her as having "big boobs." He also sent her

text messages containing images related to the "hot redhead" stereotype, implying that he considered Alfaro, whose hair is red, hot.

h.   On April 7, 2017, Alfaro received a sexually harassing phone call from one of her own firefighters, Tyler Larson, who made repeated comments about her "curves" and her "ass," saying that she was "sexy," that he "loved her body," and that he "fucking loved" her

20.   The SDFD and the City knew or should have known about this harassment, as it occurred frequently, in many cases during working hours, and often in broad view of others. This harassment was a severe and pervasive feature of Alfaro's employment that materially changed the conditions of her employment, rendering the environment abusive.

**B.   SDFD AND THE CITY DISCRIMINATED AGAINST ALFARO WITH RESPECT TO PROMOTIONS, PAY, AND OTHER TERMS AND CONDITIONS OF EMPLOYMENT**

21.   The sexism that pervades the SDFD affects nearly every aspect of Alfaro's work. Because of her sex and gender, Alfaro has been denied promotions and work assignments, earned less than men for the same work, and been held to a discriminatory double standard.

22.   The SDFD refuses to appoint Alfaro to any In-Service Training (IST) Instructor positions related to trucks and or engines. Alfaro applied for these positions in June 2012, May 2014, January 2015, June 2016, and May 2017. Her experience teaching and working in the some of the busiest stations makes her highly qualified for these jobs. Even though 5-10 instructors are selected for the positions each quarter, in each case, the position has gone to a man who was, upon information and belief, less qualified. For example, in 2016, a male

---

COMPLAINT FOR DAMAGES

8

captain was selected as the lead IST Instructor on roof operations. Upon information and belief, the captain selected had limited to no prior experience with roof operations, and had never worked on a truck before.

23. In January of 2015, Alfaro emailed Battalion Chief and Training Officer James Gaboury to inquire as to why she was repeatedly passed over for these positions. He provided no answer, and instead, directed Alfaro to submit a list of the subjects that she was interested in teaching and relevant experience. By contrast, SDFD has had no qualms about assigning Alfaro as an IST Coordinator for Emergency Medical Services — a less stereotypically male role.

24. In or about March of 2015, in anticipation of her promotion to Captain, Alfaro offered to exchange her permanent Post Academy Trainer (PAT) position for a temporary one, as a favor to a male engineer, on the condition that she continue to maintain the PAT designation and receive her full paramedic pay along with the additional 5% bonus that is standard for PAT's, whether permanent or temporary. Battalion Chief Gaboury (male) agreed with the plan, told Alfaro that she was "doing a stand-up thing," and assured her that she would continue to receive her full paramedic pay and the additional 5% PAT pay. Instead, on June 8, 2015, a memorandum was issued in the Department, indicating that Alfaro's PAT title was being removed and 5% bonus terminated effective July 4, 2015. Nonetheless, Battalion Chief Gaboury directed Alfaro to continue performing the duties of the PAT position, which Alfaro did, without the appropriate title or compensation, for several shifts. Alfaro is aware of at least three male Fire Captains who kept their PAT positions and, upon information and belief, the 5% pay bump for performing PAT work, upon promotion.

COMPLAINT FOR DAMAGES                                                9

25.  Alfaro complained about this to the union president, Chief Arrollado, who said that he could take no action to restore Alfaro's PAT title or pay.

26.  Because her PAT designation was unfairly removed, Alfaro was promoted into a bottom-step captain position and had to wait through six months of probation before becoming a top step captain, a position in which she would have started out, had she retained her PAT designation. As a result, Alfaro's salary was not only lower than those of the other male Fire Captains in the Department, but also lower than the salary than what she had been receiving as an Engineer with a PAT designation prior to her promotion.

27.  In addition to facing discrimination in pay and promotions, Alfaro has been subjected to heightened scrutiny and held to a higher standard than male captains. Alfaro's supervisors have consistently discriminated against her based on her gender by questioning her skills and expertise, denying her special work opportunities, subjecting her performance to a much higher level of scrutiny than male firefighters, and denying her the support needed for success and advancement within the Department.

28.  For example, in or about October of 2015, Battalion Chief Steve Salaz required Alfaro to undergo two special trainings that male captains were not required to attend. During one of the trainings, Chief Salaz sent a male captain to shadow Alfaro. At this time, Alfaro was already a Fire Captain with an extraordinary amount of experience in not only training but also teaching training, so there was no reason to have another Captain overlooking her performance. In doing so, Chief Salaz undermined and humiliated Alfaro in front of other members of the Department.

COMPLAINT FOR DAMAGES                                                    10

C.   SDFD AND THE CITY FAILED TO TAKE ANY ACTION TO PREVENT
     OR CORRECT THE DISCRIMINATION AND HARASSMENT, AND
     DEFENDANTS RETALIATED AGAINST ALFARO

29.   The SDFD and the City have known of the discrimination and harassment that Alfaro faced for years. Her superiors are responsible for the discrimination and are either responsible for or present to observe much of the harassment she regularly encounters. Yet, the SDFD and the City prefer to turn a blind eye. When Alfaro finally complained formally, the SDFD and the City of San Diego carried out the resulting investigations in a public manner with no regard for Alfaro's privacy. Predictably, the publicity around this investigation only exacerbated the harassment, as the SDFD and the City knew or should have known it would. In addition, Alfaro has repeatedly been denied promotions and assignments because of her protected complaints and, in the alternative, because of her sex. The SDFD and the City of San Diego, including Fire Chief Brian Fennessy failed to take reasonable steps to remedy this deteriorating situation.

30.   In February of 2017, Alfaro complained to Chief Arrollado.  When Alfaro described the disrespect she faced and the fear she experienced as a result of this discrimination and harassment, Chief Arrollado acknowledged that Alfaro was not the only female firefighter who had reached out to him about this problem.

31.   Following their conversation, Chief Arrollado filed a sexual harassment complaint with the City EEO office on Alfaro's behalf as part of his mandatory reporting duties as a supervisor and union president at the time.

32.   In or about March of 2017, Alfaro told John O'Neill of the City HR Office that the City should not serve any papers to

COMPLAINT FOR DAMAGES                                    11

her or interview her at the fire station because it was not neutral ground. She warned O'Neill that firefighters connected to sexual harassment complaints were severely targeted at work.

33. On March 28, 2017, Alfaro was served with a Notice to Appear for an investigation on April 3, 2017. Not only was the Notice served while Alfaro was on duty, but it was sent to a Battalion Chief who was not even her assigned supervisor.

34. In response, Alfaro sent emails to Anna Fudge and Abby Jarl-Veltz in the City HR department, expressing once more that she did not wish to have any part of the investigation happen at the fire station. These went unheeded.

35. A few days after the first witness was called in response to her report of sexual harassment, approximately thirty people blocked Alfaro on Facebook. Not long after this, Alfaro received several phone calls with just heavy breathing.

36. On April 7, 2017, Alfaro received a phone call from Tyler Larson, one of the firefighters from her own crew. During the call, he made repeated comments about her "curves" and her "ass," saying that she was "sexy," that he loved her body, and that he "fucking loved" her.

37. On or about April 8, 2017, Alfaro reported this harassment the City EEO and HR, who referred it back to the fire department for an investigation. Despite Alfaro's explicit requests that the SDFD not publicize her harassment complaints within the Department, the City sent her a Notice of Fact Finding indicating that she would be interviewed about the incident while on duty at the fire station. Once again, Alfaro received the notice while she was at work with several male firefighters nearby.

38. May 2, 2017, Alfaro responded by sending an email to Chiefs Alfredo Duron, Alan Arrollado, Jeffrey Mitchell, Robert

---

COMPLAINT FOR DAMAGES                                                    12

Garcia, Brian Fennessy, and Kevin Ester again asking that they not serve and interview her at the fire station.

39.   On May 17, 2017, Alfaro interviewed for an In-Service Training Coordinator position. Immediately before the interview, personnel at the facility where the interview was to occur informed Alfaro that everyone was talking about her sexual harassment claim against Jamie Nichols. Nonetheless, Alfaro performed well on the interview and was more qualified than the other candidates. A few days later, she received a call from Battalion Chief Ty Shimoguchi, who notified her that she had not been selected for the position, but gave her no explanation. Several days later, Alfaro learned that a male captain, the most junior candidate, was selected for the position. The selected candidate had been Captain for less than 6 months at the time and had previously been in predominately operational positions within the Department. The IST Training Coordinator was an administrative position that Alfaro was much more qualified for, as she had been Captain for well over a year at this time, and had extensive experience helping develop the engineer training academy, working with probationary fighters, and assisting with continuing education as an IST instructor.

40.   In June of 2017, Alfaro was forced to go on light duty due to a back injury. During this time, Alfaro has applied to a number of special assignments, including the Safety Committee, the Emergency Medical Services Operations Coordinator, and the Wildland Hand Crew. In addition, numerous coordinators from training and EMS have requested that Alfaro help out with various projects within the Department, including the new Engineers Academy (an initiative that she had helped develop) and Project Heartbeat. However, upper level management has denied Alfaro all of these positions and special assignments.

COMPLAINT FOR DAMAGES

Each such position or assignment went to a less-qualified male firefighter with much less relevant experience.

41. In June of 2017, Alfaro informed Captain Joseph Scuri that she was interested in assisting with training in the Engineers Academy. Initially, Scuri agreed that Alfaro should be on the team, as she had helped develop the idea and knew the most about the project. Later, Chief Scuri told Alfaro that Battalion Chief Ty Shimoguchi had "cussed him out" for requesting her on the team. At the end of the month, Alfaro received an email from Battalion Chief Shimoguchi denying her request to assist with the training, stating that there were already three light duty personnel helping out with the project. However, during prior conversations with Alfaro, Captain Scuri had commented that none of the other firefighters knew or would do as much for the project as she could, and continued to request that she help out with the project during her time off without receiving the official assignment and pay.

42. Throughout the months of June and July of 2017, Alfaro continued to pitch new ideas and initiatives for ways to improve the Department. She created a variety of different resources to use for disaster preparedness, stress reduction, and fact findings, but found little feedback or support.

43. In or about late June of 2017, Alfaro emailed Deputy Chief of Emergency Medical Services, Gina La Mantia, to request guidance on how to be successful as a high ranking female firefighter within the Department. On July 5, 2017, Alfaro received an email from La Mantia, stating that La Mantia felt uncomfortable meeting with Alfaro without a witness based on statements that Alfaro had made during previous Department investigations into La Mantia's misconduct and violations of Department rules and regulations. Upon information and belief,

La Mantia's hesitance to meet with Alfaro was also the result of Alfaro's protected complaints of sexual harassment and discrimination and participation in the resulting investigations, as well as the City and the SDFD's mishandling of those complaints and investigation. They eventually scheduled a time to meet with a witness present, but La Mantia later cancelled their meeting.

44.   After this, La Mantia placed herself on an interview panel for the EMS Operations Coordinator position, a position that La Mantia knew or should have known Alfaro had applied for. On August 1, 2017, Chief La Mantia, notified Alfaro that she had been denied the position of EMS Operations Coordinator. Alfaro responded by emailing La Mantia to ask for feedback and to follow up on her request for mentorship. In response, La Mantia claimed that Alfaro's statements in a 2014 fact-finding made her request for guidance "completely irrational and insincere."

45.   As a result of Alfaro's reports of sexual harassment and discrimination, and her participation in fact findings with the City EEO division, HR Department, and the SDFD, she has been ostracized within the Department. Fire chiefs ignore Alfaro in the workplace, and men snicker at her under their breath.   On October 30, 2017, Professional Standards Unit Chief Garcia conducted a discipline training with four captains and multiple engineers. He would not look Alfaro in the eyes and stood up to shake hands with everyone except her. During the training, he did not look Alfaro in the eyes, and no one sat next to her.

46.   On October 26, 2017, Alfaro sent an email to Battalion Chief Glen Holder reporting that she had received more crank calls since the beginning of the investigation into her sexual harassment complaints, and asked that Chief Holder pass the email up the chain of command in the Department. In her email,

she stressed that the Department needed to follow and enforce its own policies and procedures relating to sexual harassment. Alfaro made it abundantly clear that she would no longer tolerate SDFD and the City's failure to protect SDFD employees from sexual harassment and resulting retaliation, and indicated that she would do whatever it takes to protect herself and her family.

47. Shortly after this, Deputy Chief Kelley Zombro called Alfaro. During their conversation, Zombro said that Alfaro was physically vulnerable and would not be able to protect herself, implying that she would face physical harm for such reports of harassment and retaliation. 48. Continuing this effort to intimidate Alfaro, on October 30, 2017, Zombro paid Alfaro a visit at her station during her next shift. Zombro put Alfaro's rig out of service for 2 hours, ensuring that she would have to remain at the station. He then met Alfaro, one-on-one, outside. Standing on a curb to add further to the substantial height difference between the two, Zombro chastised Alfaro for sending the email and informed her that Chief Fennessy did not want her to send any further emails or videos. Again, he implied that Alfaro was vulnerable, saying that she "needed to get stronger." Alfaro was intimidated by Zombro's manner and tone.

49. This retaliation is continuing. On November 23, 2017, after learning that her daughter-in-law's water had broken, Alfaro requested emergency leave to be present at the birth of her grandchild. Alfaro is unaware of any occasion on which the SDFD has denied a request for emergency leave. The Department refused. Alfaro was told that Chief Zombro had denied her emergency leave request, saying that if she left, she

would be abandoning her post and would be subject to discipline. As a result, Alfaro missed the birth of her grandchild.

50.  The Department and the City continue to endorse this behavior and have taken no meaningful steps to redress the harassment, discrimination, and retaliation. Chief Jamie Nichols, one of the men who harassed Alfaro, was promoted to a specialty station and given a raise after just a 4-day suspension, sending a clear message to others that the Department did not prohibit his sexually targeting Alfaro. Chief Nichols is currently also assigned as an overtime instructor in the Fire Academy, which carries a significant increase in pay. The Department continues to ratify this ongoing harassment, discrimination, and retaliation.

**D.  ALFARO EXPERIENCED SUBSTANTIAL MENTAL AND EMOTIONAL INJURY BECAUSE OF DEFENDANTS' UNLAWFUL CONDUCT**

51.  SDFD's wrongful actions, described above, have taken a massive toll on Alfaro's emotional and mental wellbeing. Alfaro has not only suffered economic loss, but also experienced and continues to experience humiliation, depression, severe emotional distress, anxiety, stress, and difficulty sleeping. She has also had to give up responsibilities that she had formerly enjoyed, including teaching the continuing education and paramedic classes, because of the erosion of respect for her among men in the Department. In sum, she has been made to feel like she no longer belongs within the Department.

///
///
///
///
///
///

## IV.

### CAUSES OF ACTION

#### FIRST CAUSE OF ACTION
(Sex Harassment in Violation of Title VII,
42 U.S.C. 2000e *et seq.*)
(Against SDFD, the City, Jamie Nichols & & Does 1 through 20,
inclusive)

52.   Alfaro hereby incorporates by reference Paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53.   At all times herein mentioned, Title VII, 42 U.S.C. 2000e *et seq.*, was in full force and effect and was fully binding upon SDFD, the City, and Nichols. 42 U.S.C. 2000e-2 prohibits discrimination, including sex-based harassment.

54.   The actions of Alfaro's male managers and coworkers, including without limitation the unwelcome sexual and sexually objectifying comments, noises and gestures, romantic pursuit, sexual contact, exposure of male genitalia, misogynist and male chauvinist remarks, and other lude behavior, created a hostile sexual environment that materially altered Alfaro's working conditions and which constitutes sexual harassment in violation of 42 U.S.C. 2000e-2(a).

55.   This harassing conduct was severe and pervasive.

56.   A reasonable person in Alfaro's position would consider the environment to be hostile or abusive and Alfaro considered and considers the environment to be hostile and abusive.

57.   SDFD and the City knew or should have known of these violations, and took no steps to bring an end to the harassment Alfaro faced. Instead, these violations have continued throughout Alfaro's employment and constitute a continuing violation.

58.   As a direct, foreseeable and proximate result of SDFD, the City, and Nichols's unlawful actions, Alfaro has

COMPLAINT FOR DAMAGES

18

suffered economic damages including back pay, front pay, equity, benefits and other compensation.

59.   As a direct, foreseeable, and proximate result of SDFD, the City, and Nichols's unlawful actions, Alfaro has suffered emotional distress, humiliation, shame, and embarrassment, all to Alfaro's damage in an amount to be proven at the time of trial.

60.   SDFD, the City, and Nichols committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Alfaro and others.

61.   Alfaro is thus entitled to recover punitive damages in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Sex Harassment in Violation Of FEHA
### Cal. Gov't Code § 12940(a) & (j))
### (Against SDFD, the City, Jamie Nichols & Does 1 through 20, inclusive)

62.   Alfaro hereby incorporates by reference Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.   At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900, et seq., was in full force and effect and was fully binding upon SDFD, the City and Nichols. Specifically, §§ 12940(j) prohibits an employer from sexually harassing an employee on the basis of her sex.

64.   The actions of Alfaro's male managers and coworkers, including without limitation the unwelcome sexual and sexually objectifying comments, noises and gestures, romantic pursuit, sexual contact, exposure of male genitalia, misogynist and male chauvinist remarks, and other lude behavior, created a hostile

sexual environment that materially altered Alfaro's working conditions and which constitutes sexual harassment in violation of Gov't Code § 12940(j)(1).

65. This harassing conduct was severe and pervasive.

66. A reasonable person in Alfaro's position would consider the environment to be hostile or abusive and Alfaro considered and considers the environment to be hostile and abusive.

67. SDFD and the City knew or should have known of these violations, and took no steps to bring an end to the harassment Alfaro faced. Instead, these violations have continued throughout Alfaro's employment and constitute a continuing violation.

68. As a direct, foreseeable and proximate result of SDFD, the City, and Nichols's unlawful actions, Alfaro has suffered economic damages including back pay, front pay, equity, benefits and other compensation.

69. As a direct, foreseeable, and proximate result of SDFD, the City, and Nichols's unlawful actions, Alfaro has suffered emotional distress, humiliation, shame, and embarrassment, all to Alfaro's damage in an amount to be proven at the time of trial.

70. SDFD, the City, and Nichols's committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Alfaro and others.

71. Alfaro is thus entitled to recover punitive damages in an amount according to proof.

///

///

///

---

COMPLAINT FOR DAMAGES                                                    20

### THIRD CAUSE OF ACTION

**(Discrimination in Violation of Title VII
42 U.S.C. 2000e *et seq.*)**
**(Against SDFD, the City, & Does 1 through 20, inclusive)**

72.  Alfaro hereby incorporates by reference Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.  At all times herein mentioned, Title VII, 42, U.S.C. 2000e *et seq.*, was in full force and effect and was fully binding upon SDFD and the City. Alfaro was a member of a group protected by the statute, in particular section 2000e-2(a), prohibiting discrimination in employment based on sex.

74.  SDFD and the City discriminated against Alfaro on the basis of her sex in violation of Title VII by denying her promotions and assignments, stripping her of her PAT title, paying her less than similarly-situated men, subjecting her to higher standards and a higher level of scrutiny than it does men, and subjecting her to other inequitable terms and conditions of employment.

75.  SDFD and the City knew or should have known of these violations, and took no steps to bring an end to them. Instead, these violations have continued throughout Alfaro's employment and constitute a continuing violation.

76.  As a direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered and continues to suffer substantial losses in earnings, equity and other employment benefits and has incurred other economic losses.

77.  As a further direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered emotional distress, humiliation, shame, and

embarrassment all to Alfaro's damage in an amount to be proven at time of trial.

78.   SDFD and the City committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of Alfaro and others.

79.   Alfaro is thus entitled to recover punitive damages in an amount according to proof.

### FOURTH CAUSE OF ACTION

**(Discrimination in Violation of the FEHA
Cal. Gov't Code § 12940(a))
(Against SDFD, the City, & Does 1 through 20, inclusive)**

80.   Alfaro hereby incorporates by reference Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.   At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Government Code § 12940 et seq., was in full force and effect and fully binding upon SDFD and the City. Alfaro was a member of a group protected by the statute, in particular section 12940(a), prohibiting discrimination in employment based on sex.

82.   SDFD and the City discriminated against Alfaro on the basis of her sex in violation of Government Code § 12940(a) by denying her promotions and assignments, stripping her of her PAT title, paying her less than similarly-situated men, subjecting her to higher standards and a higher level of scrutiny than it does men, and subjecting her to other inequitable terms and conditions of employment.

83.   SDFD and the City knew or should have known of these violations, and took no steps to bring an end to them.

Instead, these violations have continued throughout Alfaro's employment and constitute a continuing violation.

84.  As a direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered and continues to suffer substantial losses in earnings, equity and other employment benefits and has incurred other economic losses.

85.  As a further direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered emotional distress, humiliation, shame, and embarrassment all to Alfaro's damage in an amount to be proven at time of trial.

86.  SDFD and the City committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of Alfaro and others.

87.  Alfaro is thus entitled to recover punitive damages in an amount according to proof.

## FIFTH CAUSE OF ACTION

**(Unequal Pay in Violation of the California Equal Pay Act, Cal. Lab. Code §§ 1194.5, 1197.5)**
**(Against SDFD, the City, & Does 1 through 20, inclusive)**

88.  Alfaro hereby incorporates by reference Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.  At all times herein mentioned, the California Equal Pay Act, California Labor Code 1197.5, was in full force and effect and fully binding upon SDFD and the City.

90.  SDFD and the City violated section 206 et seq. paying Alfaro less than similarly-situated men performing substantially similar work when viewed as a composite of skill, effort, and

responsibility and performed under similar working conditions, and less than similarly situated men performing equal work on jobs the performance of which requires equal skill, effort, and responsibility under similar working conditions.

91. SDFD and the City committed these violations willfully, knowingly, and intentionally.

92. SDFD and the City knew or should have known of these violations, and took no steps to bring an end to them. Instead, these violations have continued throughout Alfaro's employment and constitute a continuing violation.

93. As a direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered and continues to suffer substantial losses in earnings, equity and other employment benefits and has incurred other economic losses.

94. As a further direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered emotional distress, humiliation, shame, and embarrassment all to Alfaro's damage in an amount to be proven at time of trial.

95. Alfaro is thus entitled to recover all legal and equitable damages under the law, including wages, interest, and liquidated damages, in an amount according to proof.

### SIXTH CAUSE OF ACTION

**(Retaliation in Violation of Title VII)**
**(Against SDFD, the City, & Does 1 through 20, inclusive)**

96. Alfaro hereby incorporates by reference Paragraphs 1 through 95 of this Complaint as if fully set forth herein. 105. At all times herein mentioned, Title VII, 42 U.S.C. 2000e et seq, was in full force and effect and was fully binding upon SDFD and the City. Specifically, § 2000e-3 makes it an unlawful employment practice for an employer to retaliate against any person because the person has opposed any practices forbidden

under Title VII or because the person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing related to Title VII.

97.   On multiple occasions, Alfaro opposed, reported, and took part in the investigation of the sexual harassment, discrimination, and retaliation she experienced. In response, SDFD and the City subjected her to further harassment, exacerbated by their refusal to keep these complaints and investigations private, denied her promotions and assignments, denied her emergency leave request, and subjected her to other adverse actions.

98.   SDFD and the City knew or should have known of these violations, and took no steps to bring an end to them. Instead, these violations have continued and constitute a continuing violation.

99.   As a direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered and continues to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses.

100.   As a direct, foreseeable, and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered substantial emotional distress, humiliation, shame, and embarrassment, all to Alfaro's damage in an amount to be proven at the time of trial.

101.   SDFD and the City committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Alfaro and others.

102.   Alfaro is thus entitled to recover punitive damages in an amount according to proof.

COMPLAINT FOR DAMAGES

## SEVENTH CAUSE OF ACTION

**(Retaliation in Violation of Cal. Gov't Code § 12940(h))**
**(Against SDFD, the City, & Does 1 through 20, inclusive)**

103.    Alfaro hereby incorporates by reference Paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.    At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900, et seq., was in full force and effect and was fully binding upon SDFD and the City. Specifically, § 12940(h) makes it an unlawful employment practice for an employer to discriminate against any person because the person has opposed any practices forbidden under this part.

105.    On multiple occasions, Alfaro opposed, reported, and took part in the investigation of the sexual harassment, discrimination, and retaliation she experienced. In response, SDFD and the City subjected her to further harassment, exacerbated by the refusal to keep these complaints and investigations private, denied her promotions and assignments, denied her emergency leave request, and subjected her to other employment adverse actions, in violation of § 12940(h).

106.    SDFD and the City knew or should have known of these violations, and took no steps to bring an end to them. Instead, these violations have continued and constitute a continuing violation.

107.    As a direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered and continues to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses.

108.    As a direct, foreseeable, and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered

---

COMPLAINT FOR DAMAGES

substantial emotional distress, humiliation, shame, and embarrassment, all to Alfaro's damage in an amount to be proven at the time of trial.

109.   SDFD and the City committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Alfaro and others.

110.   Alfaro is thus entitled to recover punitive damages in an amount according to proof.

## EIGHTH CAUSE OF ACTION

**(Retaliation in Violation of Violation of the Whistleblower Protection Act, Gov. Code 8547 et seq.)**
**(Against SDFD, the City, Zombro, La Mantia, & Does 1 through 20, inclusive)**

111.   Alfaro hereby incorporates by reference Paragraphs 1 through 110 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

112.   California's Whistleblower Protection Act, Government Code 8547 et seq., prohibits public employees from retaliating against employees for protected disclosures regarding improper governmental activity. Specifically, it provides that "any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee […] for having made a protected disclosure shall be liable in an action for damages. Cal. Gov't Code § 8547.8; See also 8547.3.

113.   On multiple occasions, Alfaro opposed, reported, and initiated and took part in the investigation of the sexual harassment, discrimination, and retaliation she experienced. In response, Defendants attempted to stifle Alfaro's complaints and to intimidate her, subjected her to further harassment,

exacerbated by the refusal to keep these complaints and
investigations private, denied her promotions and assignments,
denied her emergency leave request, and subjected her to other
adverse employment actions, in violation of Cal. Gov't Code §§
8547.3 and 8547.8.

114.   In the alternative, she also participated in an
investigation of Deputy Chief Gina La Mantia, in which she
provided truthful testimony during a hearing to the effect that
La Mantia had violated numerous SDFD rules and regulations and
engaged in gross misconduct by bullying employees and behaving
unprofessionally. In response, Defendants subjected Alfaro to
further harassment, exacerbated by the refusal to keep these
complaints and investigations private, and SDFD and La Mantia
denied her promotions and assignments, in violation of Cal.
Gov't Code §§ 8547.3 and 8547.8.

115.   Defendants knew or should have known of these
violations, and took no steps to bring an end to them. Instead,
these violations have continued and constitute a continuing
violation.

116.   As a direct, foreseeable and proximate result of
Defendants' unlawful actions, Alfaro has suffered and continues
to suffer losses in earnings, equity and other employment
benefits and has incurred other economic losses.

117.   As an actual and proximate result of Defendants'
wrongful conduct, Alfaro has suffered and continues to suffer
severe and continuous humiliation, emotional distress, and
physical and mental pain and anguish, all to her damage in an
amount according to proof at the time of trial.

118.   Defendants committed the acts alleged herein
maliciously, fraudulently, and oppressively, with the wrongful
intention of injuring Alfaro, and acted with an improper and

evil motive amounting to malice and in conscious disregard of Alfaro's rights. Because the acts taken toward Alfaro were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Alfaro, she is entitled to recover punitive damages in an amount according to proof.

**NINTH CAUSE OF ACTION**

**(Retaliation in Violation of the California Whistleblower Protection Act, Cal. Lab. Code §§ 1102.5& 98.6)**
**(Against SDFD, the City, Zombro, Gina La Mantia, & Does 1 through 20, inclusive)**

119.   Alfaro hereby incorporates by reference Paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.   California's Whistleblower Protection Act, Cal. Lab. Code Section 1102.5(a) prohibits "an employer, or any person acting on behalf of the employer," from making, adopting, or enforcing "any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

121.   Cal. Lab. Code Section 1102.5(b) provides that "an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may

disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

122.   Cal. Lab. Code Section 1102.5(c) provides that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

123.   Cal. Lab. Code Section 1102.5(d) provides that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment."

124.   Cal. Lab. Code Section 98.6 forbids discriminating, retaliating, or taking other adverse actions against an employee for "engag[ing] in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner,

made a written or oral complaint that he or she is owed unpaid wages, […] or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her."

125.   On multiple occasions, Alfaro opposed, reported, and initiated and took part in the investigation of, the sexual harassment, discrimination, and retaliation she experienced. In response, Defendants attempted to stifle Alfaro's complaints and to intimidate her, subjected her to further harassment, exacerbated by the refusal to keep these complaints and investigations private, denied her promotions and assignments, denied her emergency leave request, and subjected her to other employment adverse actions, in violation of Labor Code §§ 98.6 and 1102.5(a) through (d).

126.   In the alternative, she also participated in an investigation of Deputy Chief Gina La Mantia, in which she provided truthful testimony during a hearing to the effect that La Mantia had violated numerous SDFD rules and regulations and engaged in gross misconduct by bullying employees and behaving unprofessionally. In response, Defendants subjected Alfaro to further harassment, exacerbated by the refusal to keep these complaints and investigations private, and Defendants denied her promotions and assignments, in violation of Labor Code §§ 1102.5(a) through (d).

127.   Defendant knew or should have known of these violations, and took no steps to bring an end to them. Instead, these violations have continued and constitute a continuing violation.

128.   As a direct, foreseeable and proximate result of Defendants' unlawful actions, Alfaro has suffered and continues

COMPLAINT FOR DAMAGES                                                       31

to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses.

129.  As an actual and proximate result of Defendants' wrongful conduct, Alfaro has suffered and continues to suffer severe and continuous humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

130.  Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, and acted with an improper and evil motive amounting to malice and in conscious disregard of Alfaro's rights. Because the acts taken toward Alfaro were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Alfaro, she is entitled to recover punitive damages in an amount according to proof.

**TENTH CAUSE OF ACTION**

**(Failure to Take All Reasonable Steps to Prevent Sexual Harassment, Discrimination, and Retaliation in Violation of Cal. Gov't Code § 12940(k))**
**(Against SDFD, the City, & Does 1 through 20, inclusive)**

131.  Alfaro hereby incorporates by reference Paragraphs 1 through 130 of this Complaint as if fully set forth herein.

132.  At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900, et seq., was in full force and effect and was fully binding upon SDFD and the City. Specifically, § 12940(k) makes it an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent sexual harassment and discrimination from occurring.

133.  The harassment, discrimination, and retaliation Alfaro experienced was open and conspicuous such that SDFD and

the City knew or should have known it was occurring. Moreover, SDFD and the City received multiple complaints about this misconduct. They did not take reasonable to steps to end or to prevent these violations. Instead, they publicized the complaints and investigation of the harassment, discrimination, and retaliation Alfaro was experiencing, with the predictable result that Alfaro faced even greater harassment, discrimination, and retaliation. SDFD and the City failed to adequately investigate this misconduct behavior when warned and failed to take all reasonable steps to prevent this discrimination, harassment, and retaliation.

134.   These violations have continued and constitute a continuing violation. 144.   As a direct, foreseeable and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered and continues to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses.

135.   As a direct, foreseeable, and proximate result of SDFD and the City's unlawful actions, Alfaro has suffered substantial emotional distress, humiliation, shame, and embarrassment, all to Alfaro's damage in an amount to be proven at the time of trial.

136.   SDFD and the City committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Alfaro and others.

137.   Alfaro is thus entitled to recover punitive damages in an amount according to proof.

///

///

### ELEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)
### (Against All Defendants)

138.   Alfaro hereby incorporates by reference Paragraphs 1 through 137 of this Complaint as if fully set forth herein.

139.   The conduct of Defendants and their agents was so extreme and outrageous that it exceeded the boundaries of human decency and was beyond pale of conduct tolerated in a civilized society. This conduct was intended to cause severe emotional distress, or was done in reckless disregard of the probability of causing severe emotional distress.

140.   These violations have continued and constitute a continuing violation.

141.   As an actual and proximate result of Defendants' wrongful conduct, Alfaro has suffered and continues to suffer severe and continuous humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

142.   As a direct, foreseeable and proximate result of Defendants' unlawful actions, Alfaro has suffered and continues to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses.

143.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Alfaro, and acted with an improper and evil motive amounting to malice and in conscious disregard of Alfaro's rights. Because the acts taken toward Alfaro were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Alfaro,

she is entitled to recover punitive damages in an amount according to proof.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Alfaro timely filed charges with the EEOC and the Department of Fair Employment and Housing agencies and received right to sue letters.  (Attached are the right-to-sue letters as Exhibit 1 and Exhibit 2).

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and causes of action alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Alfaro prays for judgment as follows:

    a. For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, damages for emotional distress and pain and suffering, according to proof allowed by law;

    b. For liquidated and punitive damages allowed by law;

    c. For restitution and/or disgorgement;

    d. For an award to Alfaro of costs of suit incurred herein and reasonable attorneys' fees;

    e. For an award of prejudgment and post-judgment interest; and

    f. For an award to Alfaro of such other and further legal and equitable relief as the Court deems just and proper.

DATED: April 20, 2018              *s/  Manuel Corrales, Jr.*
Manuel Corrales, Jr., Esq.
Attorney for Plaintiff SARA
ALFARO

---

COMPLAINT FOR DAMAGES                          35

# EXHIBIT "1"

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Sara Alfaro<br>C/O Manuel Corrales Jr., Attorney At Law<br>17140 Bernardo Center Dr., Suite 358<br>San Diego, CA 92128 | From: | San Diego Local Office<br>555 W. Beech Street<br>Suite 504<br>San Diego, CA 92101 |
|---|---|---|---|

|  |  |
|---|---|
| [ ] | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2018-00131 | **Ana Sepulveda,**<br>**Investigator** | **(619) 557-7297** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____
**Christopher S. Green, Director**
**San Diego Local Office**

4/16/18
*(Date Mailed)*

Enclosures(s)

cc:

| Harold Barclay<br>EEO Investigation Manager<br>CITY OF SAN DIEGO<br>1200 Third Ave, Ste 1501<br>San Diego, CA 92101 | Manuel Corrales, Jr.<br>MANUEL CORRALES JR ATTORNEY AT LAW<br>17140 Bernardo Center Dr., Suite 358<br>San Diego, CA 92101 |
|---|---|

# EXHIBIT "2"



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.
                                                                                        DIRECTOR KEVIN KISH

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 | TDD (800) 700-2320
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 20, 2018

Manuel Corrales
17140 Bernardo Center Drive Suite 358
San Diego, California 92128

RE:   **Notice to Complainant's Attorney**
      DFEH Matter Number: 201804-01982320
      Right to Sue: Alfaro / City of San Diego et al.

Dear Manuel Corrales:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                      GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                              DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 I TDD (800) 700-2320
http://www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

April 20, 2018

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 201804-01982320
Right to Sue: Alfaro / City of San Diego et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.
                                                                                        DIRECTOR KEVIN KISH

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 | TDD (800) 700-2320
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 20, 2018

Sara Alfaro

,

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 201804-01982320
        Right to Sue: Alfaro / City of San Diego et al.

Dear Sara Alfaro,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective April
20, 2018 because an immediate Right to Sue notice was requested. DFEH will take no
further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

1
2
3

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

4

**In the Matter of the Complaint of**

5
Sara Alfaro                                          DFEH No. 201804-01982320

6
                                        Complainant,

7
vs.

8
City of San Diego

9
,

10
San Diego Fire-Rescue Department
1010 Second Ave. Suite 400
11
San Diego, California 92101

12
Jamie Nichols
1010 Second Ave. Suite 400
13
San Diego, California 92101

14
Kelley Zombro
15
1010 Second Ave. Suite 400
San Diego, California 92101

16

Gina La Mantia
17
1010 Second Ave. Suite 400
San Diego, California 92101
18

19 _____ Respondents. _____

20
1. Respondent **City of San Diego** is an **employer** subject to suit under the
21
California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

22
2. Complainant **Sara Alfaro**, resides in the City of  State of **.**

23
3. Complainant alleges that on or about **March 28, 2018**, respondent took the
following adverse actions:
24

25
**Complainant was harassed** because of complainant's sex/gender, sexual
harassment- hostile environment.

26

27
                                        -1-
*Complaint -- DFEH No. 201804-01982320*

28
Date Filed: April 20, 2018

1

2   **Complainant was discriminated against** because of complainant's sex/gender and
    as a result of the discrimination was denied hire or promotion, denied equal pay,
3   denied a work environment free of discrimination and/or retaliation, denied any
    employment benefit or privilege.

4
    **Additional Complaint Details:** The actions of Alfaro's male managers and
5   coworkers, including without limitation the unwelcome sexual and sexually
    objectifying comments, noises and gestures, romantic pursuit, sexual contact,
6   exposure of male genitalia, misogynist and male chauvinist remarks, and other lude
7   behavior, created a hostile sexual environment that materially altered Alfaro's
    working conditions and which constitutes sexual harassment in violation of Gov't
8   Code § 12940(j)(1).
    This harassing conduct was severe and pervasive.  A reasonable person in Alfaro's
9   position would consider the environment to be hostile or abusive and Alfaro
    considered and considers the environment to be hostile and abusive.  SDFD and the
10  City knew or should have known of these violations, and took no steps to bring an
11  end to the harassment Alfaro faced. Instead, these violations have continued
    throughout Alfaro's employment and constitute a continuing violation.  Alfaro has
12  suffered economic damages including back pay, front pay, equity, benefits and other
    compensation, emotional distress, humiliation, shame, and embarrassment.  SDFD
13  and the City discriminated against Alfaro on the basis of her sex in violation of
14  Government Code § 12940(a) by denying her promotions and assignments,
    stripping her of her PAT title, paying her less than similarly-situated men, subjecting
15  her to higher standards and a higher level of scrutiny than it does men, and
    subjecting her to other inequitable terms and conditions of employment.
16  SDFD and the City knew or should have known of these violations, and took no
17  steps to bring an end to them. Instead, these violations have continued throughout
    Alfaro's employment and constitute a continuing violation.
18  On multiple occasions, Alfaro opposed, reported, and took part in the investigation of
    the sexual harassment, discrimination, and retaliation she experienced. In response,
19  SDFD and the City subjected her to further harassment, exacerbated by the refusal
    to keep these complaints and investigations private, denied her promotions and
20  assignments, denied her emergency leave request, and subjected her to other
    employment adverse actions, in violation of § 12940(h), in violation of Cal. Gov't
21  Code §§ 8547.3 and 8547.8 and in violation of Labor Code §§ 98.6 and 1102.5(a)
22  through (d).
    The harassment, discrimination, and retaliation Alfaro experienced was open and
23  conspicuous such that SDFD and the City knew or should have known it was
    occurring.  Moreover, SDFD and the City received multiple complaints about this
24  misconduct. They did not take reasonable to steps to end or to prevent these
    violations. Instead, they publicized the complaints and investigation of the
25  harassment.  SDFD and the City failed to adequately investigate this misconduct

26

27                                    -2-
                    *Complaint – DFEH No. 201804-01982320*

28  Date Filed: April 20, 2018

1 | behavior when warned and failed to take all reasonable steps to prevent this
2 | discrimination, harassment, and retaliation.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

-3-
*Complaint – DFEH No. 201804-01982320*

28 | Date Filed: April 20, 2018

1  VERIFICATION

2  I, **Manuel Corrales, Jr.**, am the **Attorney** in the above-entitled complaint.  I have read
   the  foregoing  complaint  and  know  the  contents  thereof.    The  matters  alleged  are
3  based on information and belief, which I believe to be true.

4
   On April 20, 2018, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                                                         **San Diego, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                     -4-
                                   *Complaint – DFEH No. 201804-01982320*
28  Date Filed: April 20, 2018